IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel.<br>  RALPH HOLMES,<br>                                 Petitioner,<br><br>    v.<br><br>NEDRA CHANDLER, Warden,<br>  Dixon Correctional Center,<br><br>                                 Respondent. | )<br>)<br>)<br>)<br>)   12 C 4273<br>)<br>)   Hon. Virginia M. Kendall<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Ralph Holmes brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Holmes is incarcerated at Dixon Correctional Center in Dixon, Illinois, where he is in the custody of Nedra Chandler, the warden of that facility. He is currently serving a fourteen-year sentence for his conviction as an armed habitual offender under 720 ILCS § 5/24-1.7(a)(1). For the following reasons, Holmes's petition is denied.

**BACKGROUND**

On October 3, 2007, Joliet police officers Patrick Schumacher and Mark Lauer approached Holmes while he was standing in the Evergreen Terrace apartments parking lot.[1] Holmes was not legally permitted to be in that parking lot, and upon seeing the officers, he ran away. As the officers chased him, Officer Schumacher saw Holmes drop a gun and stopped to pick it up, while Officer Lauer continued to chase and ultimately apprehended him. When questioned, Holmes admitted he dropped the gun, but stated it was a BB gun, not a firearm.

---

[1] The facts cited herein were established by the State court and are presumed true unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254; *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008).

At trial the State put forth evidence that Officer Schumacher saw Holmes drop the weapon, and expert testimony that the weapon was a firearm and not a BB gun. It also put forth certified copies of Holmes's two prior firearms-related convictions. However, it did not conduct fingerprint testing on the gun, which the State claims was because Officer Schumacher touched the weapon, thereby contaminating it. Holmes's defense attorney at trial did not present any contradicting forensic evidence and did not cross-examine the State's gun identification expert. Holmes's affirmative defense included testimony from Holmes's daughter that she did not see him with a gun that day, and testimony from Holmes himself that there were other men running with him through the tunnel when Officer Schumacher saw the gun drop. The jury convicted Holmes based on this evidence on April 3, 2008, and the court sentenced him to fourteen years in prison on July 24, 2008.

Holmes directly appealed his conviction on April 6, 2009, arguing that the armed habitual statute violated the constitutional prohibition against *ex post facto* laws because his prior convictions took place before the law was passed. The Illinois State Appellate Court affirmed his conviction on November 13, 2009, on the grounds that a recent Illinois Supreme Court case foreclosed his claim. Holmes did not further appeal to the Illinois Supreme Court.

On October 16, 2008, Holmes also filed a postconviction petition and a *pro se* postconviction petition in which he raised the same six arguments currently before this Court in his habeas petition. The trial court dismissed the petitions as frivolous and without merit. Holmes appealed the dismissal, but his appointed counsel moved for leave to withdraw as counsel because he believed the appeal to be frivolous and without merit. The appellate court

granted counsel's motion to withdraw and affirmed the lower court's dismissal of Holmes's postconviction petitions.

Holmes filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court on July 26, 2011, but dropped the majority of the arguments he made in his appeal and postconviction petitions. Instead, he made three claims: that the evidence presented at trial was not sufficient to convict him; that his postconviction counsel was ineffective for seeking to withdraw; and that the appellate court abused its discretion in granting counsel's motion and affirming the denial of his postconviction petitions. The latter two arguments are absent from Holmes's present habeas petition, and the Illinois Supreme Court denied Holmes's PLA on all three arguments on September 28, 2011. (Dkt. No. 14-13 at 35.)

Holmes now presents nine claims in his petition for a writ of habeas corpus:

1. Trial counsel was ineffective under the Sixth and Fourteenth Amendments for failing to challenge the indictment on the ground that it was not signed by the foreperson of the grand jury;

2. Holmes was improperly charged and sentenced under 720 ILCS § 5/24-1.1(a) even though that charge had been "nolle prossed," and could not be charged and sentenced under 720 ILCS § 5/24-1.7(a)(1) because his past two offenses were not "forcible felonies" as defined by Illinois law;

3. The evidence was insufficient to convict Holmes as an armed habitual criminal under the Fourteenth Amendment because the State did not prove beyond a reasonable doubt that Holmes was ever in possession of a weapon;

4. The State's dismissal of the unlawful possession of a weapon count rendered the armed habitual criminal count void under the Fourteenth Amendment because unlawful possession was an element of the armed habitual criminal offense;

5. Trial counsel was ineffective under the Sixth and Fourteenth Amendments for failing to cross-examine the State's expert witness concerning how the firearm found at the scene of the crime was related to Holmes;

6. Trial counsel was ineffective under the Sixth and Fourteenth Amendments for failing to file a proper motion in limine to bar evidence of Holmes's criminal history;

7. Trial counsel was ineffective under the Sixth and Fourteenth Amendments for being unprepared for trial and failing to consult with Holmes before trial and present a defense;

8. Appellate counsel was ineffective under the Sixth and Fourteenth Amendments for failing to raise "certain" issues on direct appeal; and

9. Holmes was denied due process under the Fourteenth Amendment because he is hearing impaired and the trial was conducted without a hearing aid or sign language interpreter.

## DISCUSSION

**I. All of Holmes's claims, except Claim 3 regarding the sufficiency of the evidence, are procedurally defaulted.**

Before a federal court may consider a petition for habeas corpus, a petitioner must satisfy certain procedural requirements. If the constitutional claims arise from an Illinois state court proceeding, as this one does, the petitioner must first have presented each of the claims raised here to the Illinois Appellate Court and the Illinois Supreme Court for review. *Smith v. McKee*, 298 F.3d 374, 382 (7th Cir. 2010) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)); *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). As part of the requirement, a petitioner must have not merely raised this issue in passing, but must have fairly presented both the operative facts and the legal principles applicable to each claim to the state judiciary. *Id.* Failure to timely present each claim to the state judiciary at both the appellate and supreme court levels leads to a procedural default of that claim, barring the federal court from review. *Id.*

Habeas petitioners have two narrow exceptions available to avoid procedural default of arguments not raised before the state judiciary. Petitioners may avoid procedural default through showing cause for the failure plus prejudice to the petitioner, or may show that denial of the

claim will result in a "fundamental miscarriage of justice." *See McGee v. Bartow*, 593 F.3d 556, 565 (7th Cir. 2010). To establish cause a petitioner must show that an external impediment, such as a previously unknown factual or legal basis for the claim, prevented him timely raising the issue in the state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice a petitioner must show that any errors worked to his "actual and substantial disadvantage." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005). "A fundamental miscarriage of justice occurs when a petitioner can prove that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* (quoting *Murray*, 477 U.S. at 496).

In this case, a review of the record shows that Holmes did not present any of his claims to the state appellate court other than his sufficiency of the evidence claim. *See* Exhibit M (state post-conviction appeal). Having never presented those claims for a complete round of state court review, all claims except the sufficiency of the evidence claim are procedurally defaulted. Holmes argues the application of the cause and prejudice exception by way of his reply brief, contending that he attempted to raise the defaulted claims in the state post-conviction proceedings but was prevented from doing so by the post-conviction appellate court's decision to permit Holmes' appointed post-conviction appellate counsel to withdraw. But such arguments are meritless because the performance of post-conviction counsel generally does not afford a basis to excuse procedural default. *See Szabo v. Walls*, 313 F.3d 392, 397 (7th Cir. 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 752, 757 (1991)); accord 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.") In any event, the post-conviction appellate counsel did not fail to raise the issues Holmes now seeks to raise; to the contrary, post-conviction appellate counsel raised the issues but then moved to

withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) on grounds that counsel did not believe a good faith basis existed to pursue the issues raised. The Illinois Appellate Court granted counsel's motion and then denied the post-conviction proceedings on their merits. It is Holmes himself who then failed to preserve the issues for the Illinois Supreme Court when he petitioned for review, not an omission by his counsel below.

Holmes' final argument, that he somehow incorporated by reference the claims in the post-conviction appellate proceedings via his Illinois Supreme Court appeal of the withdrawal of his post-conviction appointed counsel, is likewise meritless. First, as stated above, the performance of post-conviction counsel is not cause to excuse a failure to raise issues. But even if it were, Holmes does not raise ineffective assistance of his post-conviction counsel as one of his claims in his petition here, thereby eliminating any plausible basis that the underlying claims that counsel allegedly failed to raise could have been preserved or incorporated by reference so as to permit them to be raised here.

    **A.**    **Claims 1, 5, 6, 7, and 8: That trial and appellate counsel were ineffective under the Sixth and Fourteenth Amendments.**

Holmes claims that both his trial counsel and his direct appeal counsel were ineffective in violation of the Sixth and Fourteenth Amendments. In order to sustain a constitutional claim for ineffective assistance of counsel, Holmes must show that counsel's performance both fell below an objective standard of reasonableness, and that but for that poor performance there was a reasonable probability of a different outcome. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In reviewing ineffective assistance claims, the Court accepts a strong presumption that the counsel's conduct falls within "the wide range of reasonable professional assistance." *Id.*; *see also Pole v. Randolph*, 570 F.3d 922, 941 (7th Cir. 2009) (courts should begin with the

presumption that assistance was adequate and that counsel made "all significant decisions in the exercise of reasonable professional judgment"). Even deficient performance will not prejudice a petitioner's case unless the probability of a different result but for the attorney's performance is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

As set forth above the record in this case contains more than sufficient evidence to convict even if either attorney had not performed adequately. But there is not evidence in the record that either counsel performed below reasonable professional standards. First, Holmes challenges the effective assistance of counsel for failing to challenge the indictment as unsigned; however, the record shows the indictment was in fact signed. (Exhibit D at C10.) Counsel is not required to make meritless motions to the trial court in order to establish effective assistance. *See Rodriguez v. United States*, 286 F.3d 972, 985 (7th Cir. 2002). Second, Holmes challenges the trial attorney's failure to cross-examine the firearms witness sufficiently. Deciding what questions to ask is a matter of trial strategy to which counsel is entitled deference. *See United States v. Jackson*, 546 F.3d 801, 814 (7th Cir. 2008). Holmes does not elaborate in his petition what questions should have been asked of the firearms expert; presumably, given his other arguments, Holmes wanted evidence about the lack of fingerprints on the firearms. However, the record reflects that Holmes' trial counsel had already established the lack of fingerprint identification through Officer Schumacher. (Exhibit A at 217.) Third, Holmes alleges that his trial counsel filed to file a proper motion *in limine* to exclude the evidence of Holmes' prior convictions. A review of the record shows that counsel did make an oral motion to exclude all of Holmes' criminal history prior to trial, which the trial court considered and denied. (Exhibit A at 183–86, 268–71.) Finally, Holmes alleges his counsel was generally unprepared for defense because he did not devote enough time to his preparation with Holmes. Without another

ineffectiveness argument, mere lack of preparation time cannot be an independent basis for ineffective assistance. *See Matheney v. Anderson*, 253 F.3d 1025, 1044 (7th Cir. 2001). A review of trial counsel's performance at trial, as required, shows that counsel presented a vigorous defense with a strategy focused on undermining the credibility of the officers testifying against Holmes together with presenting Holmes' daughter's exculpatory testimony. This is all a reasonable trial strategy that satisfies the requirements of Strickland.

With respect to Holmes' appellate counsel, Holmes did not identify any particular failings on the part of appellate counsel. *See Strickland*, 466 U.S. at 690 (petitioner must identify specific acts or omissions by appellate counsel); *Velarde v. United States*, 972 F.2d 826, 829 (7th Cir. 1992) (applying Strickland standard to appellate counsel). Holmes points to no specific issues with appellate counsel in his reply brief, after the absence had been noted and discussed by Respondent. Without specific allegations as to appellate counsel's deficiencies, this claim is must be denied.

> **B.  Claim 2: That Holmes was improperly charged and sentenced under 720 ILCS § 5/24-1.1(a) and could not be charged and sentenced under 720 ILCS § 5/24-1.7(a)(1)**

Holmes raises two challenges to his conviction as an armed habitual criminal under 720 ILCS 5/24-1.7. First, he contends that he was not charged and sentenced under 720 ILCS § 5/24-1.1 for the unlawful use or possession of a weapon by a felon. (Dkt. No. 1 at 2A.) This is true. The State charged Holmes with being an armed habitual criminal and with unlawful possession of a weapon by a felon. (Dkt. No. 14-4 at C000002-3.) The State moved to dismiss the unlawful possession charge, which the trial court granted. (Dkt. No. 14-1 at 000083-84.) After trial, the jury found Holmes guilty of being an armed habitual criminal. (*See* Dkt. No. 14-2 at 000363.)

Following the jury verdict, the trial court sentenced Holmes to fourteen years in prison. (Dkt. No. 14-2 at 000410.)

In its sentencing order, however, the trial court identified "720 ILCS 5/24-1.1(a)"—the unlawful possession statute—as the statutory citation. (Ex. H to Dkt. No. 1.) The sentencing order also identifies "armed habitual criminal" as the offense, "X" as the class, and "14 years" as the sentence. (*Id.*) This information matches statements made by the trial court when it sentenced Holmes. (Dkt. No. 14-2 at 000408-10.) Based on this Court's review of the record, it is evident that the statutory citation in the trial court's sentencing order is a clerical error in that it should identify 720 ILCS 5/24-1.7. This Court concludes that such a clerical error is not a basis for constitutional attack. *See*, *e.g.*, *McDonald v. Estelle*, 590 F.2d 153, 156 (5th Cir. 1979) ("Petitioner's final contention is one of mere clerical error in the judgment and commitment papers, if in fact any error occurred, and as such furnishes no basis for constitutional attack."). This is particularly true when Holmes acknowledges his conviction under the armed habitual criminal statute. (*See*, *e.g.*, Dkt. No. 20 at 3.)

Holmes also contends that his past offenses do not satisfy the elements of the armed habitual criminal statute because they were not "forcible felonies." (Dkt. No. 1 at 2A.) Under 720 ILCS § 5/24-1.7:

> (a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
> (1) a forcible felony as defined in Section 2-8 of this Code;
>
> (2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child as described in Section 12-4.3 or subdivision (b)(1) of

> Section 12-3.05; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05; or
>
> (3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher.

The criminal complaint charges Holmes with the offense of armed habitual criminal:

> [I]n that, said defendant possessed a firearm, to wit: a revolver, after having been convicted of Unlawful Use of Weapon by Felon in 1994 CF 4540, in the Circuit Court Will County, and the forcible felony of Aggravated Discharge of a Firearm in 1992 CF 3943 in the Circuit Court of Will County, in violation of Chapter 720, Section 5/24-1.7(a)(1), of the Illinois Compiled Statutes, 2007 and AOIC 0011385 . . . .

As with the sentencing order, Holmes attempts to turn a misidentified statute into a constitutional violation. In short, Holmes argues that the two prior offenses, the unlawful use of a weapon by a felon and the aggravated discharge of a firearm, do not fall under the subsection identified in the criminal complaint. This is true as the named offenses fall under subsection (a)(2)—and not (a)(1). But the criminal complaint nonetheless provides adequate notice of the charge against Holmes because it explicitly states which prior offenses the State intended to rely on to show that Holmes is an armed habitual criminal. Consequently, the State's misidentification of subsection (a)(1) did not violate Holmes's constitutional rights because the complaint provided adequate notice of the charges and did not prevent Holmes from defending himself. *See Bae v. Peters*, 950 F.2d 469, 479 (7th Cir. 1991).

    **C.**    **Claim 4: That the State's dismissal of the unlawful possession of a weapon charge rendered the armed habitual criminal charge void under the Fourteenth Amendment because unlawful possession was an element of the armed habitual criminal offense.**

Holmes's claim that the State's dismissal of the unlawful possession charge rendered the armed habitual criminal charge void is meritless. As discussed above, Officer Schumacher's testimony established that Holmes possessed a weapon. Although possession of a firearm is an element common to both the unlawful possession charge and the armed habitual criminal charge, the two charges are different offenses. *Compare* 720 ILCS 5/24-1.1 *with* 720 ILCS 5/24-1.7 (the unlawful possession charge requires "a person to knowingly possess" a firearm whereas the armed habitual criminal charge does not require a specific intent); *see also People v. Tolentino*, 949 N.E.2d 1167, 1178 (Ill. App. Ct. 2011) (distinguishing offenses as different charges despite having possession of a firearm as a common element). Even if the unlawful possession charge was an element of the armed habitual criminal charge, it is unnecessary to allege the lesser charge when the State proves that charge as an element of a greater charge. *See People v. Knaff*, 752 N.E.2d 1123, 1130 (Ill. 2001) (affirming conviction on lesser charge not expressly included in charging instrument where lesser charge was element of greater charge included in charging instrument). In short, the record shows that Holmes possessed a handgun, which supports his conviction as an armed habitual criminal.

> **D.     Claim 9: That Holmes was denied due process under the Fourteenth Amendment because he is hearing impaired and the trial was conducted without a hearing aid or sign language interpreter.**

Finally, Holmes's claim that he was denied due process because he is hearing impaired and was not provided with a hearing aid at trial is meritless. Holmes cites *People v. Starling*, 315 N.E.2d 163 (Ill. App. Ct. 1974) in support of the proposition that his rights were prejudiced by not being able to understand what was being said or communicate with his attorney. *Starling* involved a robbery conviction that was based in part on the testimony of a Spanish-speaking witness and a deaf witness with minimal language skills. *Id.* at 164. The court appointed

interpreters prior to trial that satisfied both parties. *Id.* at 164–65. The defendant appealed his conviction, alleging that he was denied his constitutional right to confront witnesses against him. *Id.* at 166. The defendant argued that he could not understand the witness because the translator was frequently engaging in off-the-record conversations with the witness, and that the translator was generally incompetent. *Id.* The *Starling* court stated that the central questions are whether "[witness] testimony, as presented through the interpreter, [was] understandable, comprehensible, intelligible? And, if it was not, did that lack of intelligibility, brought about by an ineffective and incompetent interpreter, deny defendant the right to be confronted by the witnesses against him?" *Id.* at 167. The court found that the defendant was denied the right to confront the accusing witness because: (1) defense counsel could not effectively cross-examine the witness due to the poor interpreter; (2) the prosecutor also complained of the interpreter's ineffectiveness; (3) the judge needed to admonish the witness and interpreter regarding the unrecorded conversations; (4) no one else participating in the trial spoke Spanish; and (5) the witness was central to the prosecution's case. *Id.* at 167–68. Thus, the "the difficulties with which that procedure was fraught *are abundantly apparent from the record.*" *Id.* at 168 (emphasis added).

Unlike the defendant in *Starling*, Holmes does not present a procedure fraught with difficulties due to his alleged hearing impairment that are "abundantly clear from the record." Quite the opposite, Holmes's record is devoid of references to his ability to hear, communicate, or understand the trial proceedings, save for one instance during his bond hearing where he stated he "didn't really hear" something. (Dkt. No. 14-1 at 000005; Dkt. No. 1 at 60–61.) Because the record contains no indication that Holmes was unable to participate in his trial or confront his witnesses due to his hearing, his claim is without merit.

**II. The record contains adequate evidence from which a rational trier of fact could have found Holmes guilty beyond a reasonable doubt of being an armed habitual criminal.**

Holmes also challenges the sufficiency of the evidence used to convict him as an armed habitual criminal. (Dkt. No. 1 at 2A.) Habeas corpus relief is available to Holmes if the record contains no evidence from which a rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Because a jury found Holmes guilty, this Court must view all of the evidence in the light most favorable to the prosecution. *Id.* at 319.

Here, the State had to prove that Holmes possessed a firearm and that Holmes previously committed at least two of the offenses listed in the armed habitual criminal statute. A police officer, Officer Schumacher, testified that he saw Holmes drop an object while running from the police, he heard the sound of metal hitting the pavement, and he stopped to pick up the object, which was a handgun. (Dkt. No. 14-1 at 000197-200.) Under Illinois law, "Actual possession is proved by testimony which shows [that the] defendant exercised some form of dominion over the unlawful substance, such as trying to conceal it or throwing it away." *People v. Love*, 937 N.E.2d 752, 756 (Ill. App. Ct. 2010) (alteration in original). Here, the jury was entitled to believe the police officer's testimony. *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar.") That testimony established that the State met the first element of the offense.

The State also introduced certified copies of Holmes's prior convictions for aggravated discharge of a firearm and unlawful use of a weapon by a felon. (Dkt. No. 14-2 at 000256.) Holmes does not dispute these prior convictions and did not object to their admission at trial.

13

(*Id.*) Consequently, the jury was entitled to rely on Holmes's prior convictions. *See United States v. Arreola-Castillo*, 539 F.3d 700, 704–05 (7th Cir. 2008) (accepting certified copies of prior convictions as proof of prior conviction beyond a reasonable doubt). Those convictions, combined with Officer Schumacher's testimony, are evidence from which a rational trier of fact could have found Holmes's guilt beyond a reasonable doubt. Therefore, Holmes's contention that the State failed to prove his guilt beyond a reasonable doubt fails.

### III. Certificate of Appealability

Unless the Court issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A). "Only if the applicant has made a substantial showing of the denial of a constitutional right" can the Court issue the certificate. 28 U.S.C. § 2253(c)(2). This Court dismisses Holmes's petition in part on procedural grounds, and in part on merit. When a court dismisses a petition on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 485 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484. Here, it is indisputable that Holmes did not raise eight of the nine arguments before this Court when he appealed his conviction to the Illinois Supreme Court, thereby waiving his right to argue them on a petition for writ of habeas corpus. When a court dismisses on merit, obtaining a certificate of

14

appealability requires Holmes to demonstrate that reasonable jurists would find this Court's assessment of the constitutional claims either debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack*, 529 U.S. at 484). Holmes has not made such a showing here due to the weight afforded eyewitness testimony by law, and the Court concludes that reasonable jurists could not find room to debate its ruling on the constitutional merits of Holmes's ineffective assistance of counsel claim. Therefore, no reasonable jurist could conclude that the Court has erred in dismissing the petition. Accordingly, the Court denies Holmes a certificate of appealability.

## CONCLUSION

For the reasons set forth above, the Court denies Holmes's Petition for Writ of Habeas Corpus and a certificate of appealability.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 22, 2013